## D. E. PARTON v. STATE.

No. A-3832. Opinion Filed June 2, 1923.
(215 Pac. 435.)

(Syllabus.)

**Homicide—Defense of Temporary Insanity—Exclusion of Evidence of Abuse of Daughter of Accused, the Wife of Deceased, by Him Prior to Admitted Reconciliation Held not Erroneous.** In a homicide case, where justification is claimed on a plea of self-defense and insanity, where the defendant and the deceased had entertained hostile feelings towards each other, and later, by defendant's own admissions, became reconciled and friendly, it is not error for the court to exclude evidence of extreme physical abuse by the deceased upon the daughter of defendant before such reconciliation; the claim being made that such cruel conduct caused the defendant at times to be irrational.

Appeal from District Court, McCurtain County; Geo. S. Marsh, Judge.

D. E. Parton was convicted of manslaughter in the first degree, and he appeals. Affirmed.

H. P. Hosey and Jeff D. McLendon, for plaintiff in error.

The Attorney General and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. D. E. Parton, plaintiff in error, here designated the defendant, was by information filed in the district court of McCurtain county on November 29, 1919, charged with the murder of Melton New. At the trial, February 14, 1920, he was by a verdict of the jury found guilty of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for a term of 10 years.

Some years prior to this tragedy the deceased, Melton New, married a daughter of the defendant. Their domestic life was turbulent. The deceased frequently whipped, beat, and shamefully abused his wife, defendant's daughter, and this abuse and ill treatment continued up to the time of her death, about six years prior to the homicide. The defendant had known of this abuse at the time, but after his daughter's death he and the deceased became friendly and entered into a partnership in a sawmill and cotton gin enterprise. In time ill feeling again developed between the parties growing out of partnership transactions.

The homicide occurred in the public highway, in the presence of several witnesses. The deceased was digging and cleaning out a ditch which ran along the side of the road adjacent to the premises in his possession. The outlet of the ditch was being constructed so that the water flowed out and over the mill premises adjacent, belonging to the defendant. On the

morning of the homicide the defendant was riding in a wagon along this highway in company with two others. When they approached the deceased, who was working with a shovel in this ditch, a dispute was had about how the outlet to the ditch should be constructed. The defendant either jumped out of the wagon or was thrown out by a sudden movement of the wagon, and he drew his pistol and shot the deceased four or five times, from which gunshot wounds he soon died.

The defendant claimed justification in his necessary self-defense and also sought to show that he was temporarily insane on account of the physical abuse which his daughter had suffered at the hands of the deceased. There is evidence to show that the deceased was of a turbulent and quarrelsome disposition and habitually carried a pistol, and that he had often threatened to punish or even kill the defendant. The defendant and one witness say that after the defendant got out or fell out of the wagon the deceased made a gesture as if to get a pistol out of his shirt bosom, and that then the defendant drew his gun and fired four or five shots into the body of the deceased in rapid succession. Other witnesses present say in effect that the deceased made no demonstration, and that the defendant was the aggressor.

Complaint is made that the trial court refused to permit the defendant to show the different acts of physical violence perpetrated upon his daughter years before the tragedy. In the absence of the jury the proffer was made in this wise:

"By Mr. Hosey: Defendant offers to show by himself that this trouble was brought up by deceased beating his wife, who was the defendant's daughter, and at that time he threatened defendant with dire punishment if he resented it; a few months after the same thing occurred again, deceased threatening what he would do to the defendant; a few months after that the same thing was done, and it was done on and one for several times frequently until the death of the deceased's wife, de-

fendant's daughter; that all of this time the deceased was threatening defendant, telling him and sending him word as to what he was going to do with him if he resented it; that he threatened to kill both his wife and the defendant; that the last beating deceased gave his wife, the daughter of this defendant, so this defendant was informed and verily believed, was the cause of her death; that at the time of the death of the wife of deceased, defendant's daughter, her eyes were blacked, both of them, brought about by the licks of the deceased; that the defendant was informed and verily believed that she had stripes up and down her back, brought about by lashes from a whipping administered to her by her husband, the deceased; that he knows that her eyes were blacked on various occasions by the hands of her husband, and were blacked by the hands of her husband when she was dead and laid out; that this almost crazed the defendant; that the acts of the deceased and the threats that he made towards this defendant, and his actions towards his daughter, brought about a condition in his mind that when he met the deceased or saw him he was nervous and fearful of his life almost to distraction; that he was extremely fearful that he would be killed or at least suffer great bodily harm from this deceased; that at all times during this period he tried to avoid the deceased and did avoid him at all times possible. That is about all we could prove up until the time of the death of defendant's daughter; that the neighbors living in that neighborhood were continually coming during all of this period to the defendant and informing him of the acts of deceased in beating his wife, and of her begging her husband to desist, and that all of these acts brought about an affection of the mind of this defendant, until at times he was not rational, and that he knows that to be a fact. (To this proffer the state objected.)

"By the Court: The court is of the opinion that, if the statements as outlined by counsel for defendant are true, it is too remote to be admissible in evidence as tending to show that the defendant at the time of the commission of the act charged herein was temporarily insane, and for the further reason that it appears from the testimony so far adduced at this trial that they were neighbors and friends from the time of the death of his wife until the time of the homicide herein,

for a period not exactly known to the court, but presumably two years."

Later the court stated:

"The objection, with this modification, will be sustained: The question of threats which might have been communicated to the defendant, if any, within the last year, may be proved, if such existed. With that modification the objection (of the state) will be sustained."

The defendant's own testimony shows that subsequent to the matters set out in the proffer the deceased courted a younger daughter of the defendant; that the defendant and the deceased sustained friendly relations for a long period of time, and during this intervening period they were intimately associated together as partners in business. Under these cir- cumstances it was not error for the court to exclude this prof- fered testimony.

Judging this situation from the standpoint of an ordinary father, it would seem that no period of time, however long, would be sufficient to efface from his mind the feelings of resentment caused by such physical abuse of his daughter. But here the proof is conclusive that defendant for a long period of time had condoned or forgotten the shameful abuse of which complaint is made.

Evidence of threats made by the deceased towards the defendant, communicated and uncommunicated, were submit- ted to the jury, covering a period of 12 months or more next preceding the homicide. Threats made antedating their com- plete and extended reconciliation were immaterial as affecting either the issue of self-defense or that of insanity.

There being no other errors urged in the brief, the judg- ment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.